IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SHAVONDA SMITH                                                                         PLAINTIFF

v.                              CASE NO. 3:21-CV-00015-BSM

PAXTON MEDIA GROUP, LLC                                                      DEFENDANT

ORDER

Paxton Media Group, LLC's ("PMG") motion for summary judgment [Doc. No. 24] is granted because Shavonda Smith has failed to show that PMG discriminated against her because of her race, or that PMG failed to pay her according to her independent contractor agreements. PMG's motion to stay the case [Doc. No. 39] and motion in limine [Doc. No. 41] are denied as moot. Smith's motion for reconsideration [Doc. No. 42] is denied, and her motion in limine [Doc. No. 44] is denied as moot.

I. BACKGROUND

Viewed in the light most favorable to Smith as the non-moving party, the facts are as follows. Shavonda Smith is a black woman who independently contracted to deliver the *Jonesboro Sun* newspaper, which is owned by PMG. Compl. ¶ 19, Doc. No. 1; Pl.'s Disputed Facts ¶¶ 1–2, Doc. No. 36. Smith contracted to deliver the *Sun* on multiple routes, and signed separate distributor agreements with PMG for each route. Pl.'s Disputed Facts ¶¶ 4–7. Her pay under these agreements was based on the number of deliveries on each route. Compl. at Ex. B, C, D, and E. Smith also had oral agreements with PMG concerning her pay for these routes that preceded the written agreements. Pl.'s SUMF ¶¶ 27, 30, 42, 44,

48, Doc. No. 37. The oral agreements provided for flat fee payments for one or more of her routes. *Id*. ¶¶ 18, 42, 48.

In March or April of 2020, Smith spoke to her district manager, Leslie Province, about why her pay had decreased. Smith Dep. at 107:8–17, Doc. No. 24-2. Smith testified that Province told her Tom Siemers and Reece Terry "put a glitch in the system" that had messed up the pay of multiple distributors. *Id*. at 107:22–108:7. At that time, Siemers was PMG's circulation manager, while Terry was the publisher of the *Sun*. Terry Aff. ¶¶ 3, 16, Doc. No. 34-9. Smith testified that Province told her there were two white distributors named Gary and Bruce whose pay was affected by the glitch, but that PMG later paid these distributors the money they were owed. Smith Dep. at 109:3–18. After hearing this, Smith spoke to Terry regarding her drop in pay. *Id*. at 117:2–23. Terry told Smith she was being paid accurately and that he would not honor any oral agreements she had with Province. *Id*.

Smith also attempted to contact Siemers to discuss her pay situation, but he did not return her calls for two months. *Id*. at 112:18–20. She testified that Province told her Siemers would talk to white distributors during this time to resolve their pay issues. *Id*. at 244:5–245:3. When Smith finally met with Siemers in September 2020, he argued with her about the number of subscribers she had on her route and did not make changes to her pay. *Id*. at 119:11–120:17. One month later, Smith quit providing services to PMG. Pl.'s Disputed Facts ¶ 51. She is suing PMG for racial discrimination under 42 U.S.C. section 1981 and the Arkansas Civil Rights Act (ACRA), and is seeking specific performance of her

contracts with PMG. Smith's lawsuit included other claims against PMG and its CEO, David Paxton, that were previously dismissed. *See* Doc. No. 15. PMG moves for summary judgment on Smith's remaining claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Summary judgment is granted on Smith's section 1981 and ACRA claims because she has not shown that PMG discriminated against her because of her race. Summary judgment is also granted on Smith's specific performance claim because she has not shown that PMG failed to pay her according to her independent contractor agreements. Smith's motion for reconsideration is also denied.

A.    <u>Section 1981</u>

Section 1981 prohibits racial discrimination in the making of public and private contracts. *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 232 (8th Cir. 2011). To establish a prima facie case of racial discrimination under section 1981, Smith must show "(1) she is a member of a racial minority, (2) PMG intended to discriminate against her on the basis of her race, and (3) the discrimination concerned an area enumerated by the statute. *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002). The parties do not dispute that Smith is a member of a racial minority. The parties also do not dispute the existence of contracts between them, even though they disagree as to whether those contracts included certain oral agreements.

Intentional race discrimination under section 1981 may be proven by either direct or circumstantial evidence. *Putnam v. Unity Health Sys.*, 348 F.3d 732, 734 (8th Cir. 2003). Smith attempts to show intentional discrimination by alleging that when a glitch caused multiple distributors to lose pay, PMG paid two white distributors what they were owed but did not do the same for her. Her support for this allegation consists almost entirely of second-hand information obtained from Province, whose direct testimony is absent from the record. Smith does not provide details about the nature of the alleged glitch that decreased her pay. She also concedes that she has no personal knowledge of how many distributors were affected by the glitch, how the glitch decreased the pay of the two white distributors, how much PMG owed the white distributors, or whether PMG actually paid the white

distributors what they were owed. Pl.'s SUMF ¶¶ 5, 7–10.

Smith has not made a sufficient showing of intentional discrimination to avoid summary judgment on her section 1981 claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (a nonmoving party must make a sufficient showing on every essential element of its case on which it bears the burden of proof). In essence, Smith's claim is that PMG treated similarly situated white distributors more favorably than her by correcting their pay discrepancies from the glitch. *See Fitzgerald v. L&L Truck Brokers, Inc.* 32 F.Supp.2d 1080, 1084 (E.D. Ark. 1999) (analyzing a section 1981 claim in the same manner as a Title VII disparate treatment claim). Even when all reasonable inferences are drawn in Smith's favor, however, the record does not support that there were two similarly situated white distributors treated more favorably.

To begin with, Smith does not show that she and two similarly situated white distributors all lost pay from a system glitch. She asserts that Province told her about a glitch affecting multiple distributors, but Province's alleged statements are lacking in details. The information Smith received was in fact so limited that she did not understand what Province meant by a "glitch." Smith Dep. at 110:3–19. Province did not tell Smith how the glitch specifically reduced her pay, or how many other distributors were affected. *Id*. at 107:25–108:7; 110:20–22; 111:13–18. Smith's testimony about the cause of her own pay loss is also murky. She attributes her pay loss to the glitch, but also seems to deny that the glitch was responsible for her alleged underpayments. *Id*. at 107:25–108:7; 112:12–17;

115:19–116:20. Smith further obscures this issue by admitting that she was paid based on the number of subscribers she delivered to, while also insisting that she only worked for PMG under oral agreements for flat-fee payments. *Id*. at 40:14–41:19; 64:25–69:17; 82:23–83:11; 87:11–88:15; 101:17–24; 166:1–25; 199:4–18; 202:1–4; 204:2–24.

Smith asserts that Province told her Bruce and Gary were also affected by the glitch, but she was not told how the glitch specifically reduced their pay or how much pay either of them lost. *Id*. at 269:21–270:5. Moreover, she does not allege that Bruce or Gary had flat-fee oral agreements similar to hers and concedes that she knows nothing about their contracts with PMG. *Id*. at 232:7–25; 250:1–8. Smith contends, however, that Province told her Bruce and Gary were eventually paid back the money they lost from the glitch. *Id*. at 109:8–18; 206:1–8; 249:16–18. She further alleges that Bruce was only paid after he quit in frustration and PMG hired him back. *Id*. at 109:8–13; 248:19–249:25. Province's alleged statements provide few other details about PMG's response to any pay discrepancies involving Smith's comparators.

Some additional information is provided by Terry, who was the publisher of the *Sun*. Terry states that in July 2020, PMG did in fact issue a check to Bruce Kettler for $870.87 after Terry determined there was a computer error in PMG's computer system related to Kettler's route under his distributor contract. Terry Aff. ¶ 28. He asserts, however, that this was the only payment PMG made related to a pay discrepancy with a distributor, and that PMG paid Smith according to her distributor contracts. *Id*. ¶¶ 21–27, 29. Moreover, Terry

states that payments under PMG's distributor contracts are based on the number of deliveries along a route, and that PMG does not enter into flat-fee agreements. *Id*. ¶¶ 4–8.

Based on the totality of evidence in the record, no reasonable juror could find that PMG intentionally discriminated against Smith based on her race, which is an essential element of her section 1981 claim. This is the case even when Province's alleged statements are taken as true. There is simply not enough factual depth in those statements for Smith to show that she was "similarly situated in all relevant respects" to the two white distributors. *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1119 (8th Cir. 2012) (finding comparators not similarly situated to support section 1981 claim). Province's statements aside, Smith's testimony that her pay loss stemmed from PMG's violation of her oral agreements for flat-fee payments makes it difficult to understand how her pay could be affected by a glitch. There is also no evidence that her comparators had similar flat-fee contracts, which further undermines any argument that she was similarly situated to the white distributors she alleges were also affected by the glitch. For these reasons, summary judgment on Smith's section 1981 claim is granted.

    B.    <u>Arkansas Civil Rights Act</u>

Claims brought under section 1981 and the ACRA are subject to the same burden of proof and receive the same analysis. *Bell v. American Greetings Corp.,* No. 3:04CV00303-WRW, 2007 WL 1559946, at *3 (E.D. Ark. May 29, 2007). Summary judgment is therefore granted on Smith's ACRA claim for the reasons stated above. *See supra* Section III.A.

C. Specific Performance

Specific performance is an equitable remedy compelling performance of a contract on the precise terms agreed upon by the parties. *Flippen v. Jones*, 382 S.W.3d 695, 698 (Ark. App. 2011). Summary judgment is appropriate because Smith does not show how PMG failed to pay her according to the terms of their written independent contractor agreements. She claims PMG owes her $13,274.75 for unpaid deliveries, but there is no evidence linking this alleged shortage to specific terms in her contracts. *See* Smith Dep. at 269:1–17; Def.'s Reply at 2 (noting exhibits purporting to reflect money owed to Smith are missing from the record), Doc. No. 38. Further, Smith admits that she knew almost nothing about her written contracts with PMG, including the terms of payment. Pl.'s Disputed Facts ¶¶ 8, 10, 14, 16. She asserts that PMG's failure to pay her actually violated the terms of oral agreements she made with Province and others before she signed the written contracts. The existing record, however, contains no evidence of such oral agreements beyond Smith's deposition contentions. *See Recio v. Creighton Univ.*, 521 F.3d 934, 939 (8th Cir. 2008) ("Evidence, not contentions, avoids summary judgment").

D. Motion for Reconsideration

Smith also moves for reconsideration of my April 25, 2022, order denying her additional time to respond to PMG's motion for summary judgment so that she could depose Province and another former PMG district manager, Jay Baker. *See* Doc. No. 33. She contends that these depositions are necessary to respond to Terry's affidavit and should be

permitted under Federal Rule of Civil Procedure 56(d).  Smith's motion is denied because the final scheduling order [Doc. No. 14] gave her nine months to complete discovery.  Based on her own deposition testimony, Smith knew these witnesses had information relevant to her claims at the time she filed her lawsuit.  Despite this knowledge, Smith did not attempt to depose these witnesses during the established discovery period, or timely seek an extension of the discovery deadline.  *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715, 717 ("While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines").

## IV. CONCLUSION

For the foregoing reasons, PMG's motion for summary judgment [Doc. No. 24] is granted, and this case is dismissed with prejudice.  PMG's motion to stay the case [Doc. No. 39] and motion in limine [Doc. No. 41] are denied as moot.  Smith's motion for reconsideration [Doc. No. 42] is denied, and her motion in limine [Doc. No. 44] is denied as moot.

IT IS SO ORDERED this 10th day of June, 2022.

_____
UNITED STATES DISTRICT JUDGE